DALE D. ARMSTRONG AND ANNE D. ARMSTRONG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Armstrong v. Commissioner
Docket No. 19120-87
United States Tax Court
T.C. Memo 1990-247; 1990 Tax Ct. Memo LEXIS 266; 59 T.C.M. (CCH) 632; T.C.M. (RIA) 90247; May 22, 1990, Filed Robert E. Kovacevich, for the petitioners. Milton J. Carter, for the respondent. KORNER, Judge. KORNER
*879 MEMORANDUM FINDINGS OF FACT AND OPINION In his notice of deficiency, respondent determined that petitioners were liable for a deficiency of $ 535,092 for tax year 1980 and an addition to tax of $ 267,546 under section 6653(b). [1] Respondent subsequently adjusted *267 his notice of deficiency to reflect a deficiency of $ 441,030.54 and an addition to tax under section 6653(b) of $ 220,515.27. The issues before us are whether: (i) petitioners failed to report substantial amounts of income in 1980; (ii) petitioner Dale D. Armstrong is liable for an addition to tax for fraud under section 6653(b); [2] (iii) petitioner Dale D. Armstrong is liable for self-employment tax; and (iv) petitioners may elect to use income averaging to calculate their income tax liability for 1980. Some of the facts have *268 been stipulated and are so found. The stipulation of facts and exhibits are incorporated by this reference. For convenience, our Findings of Fact and Opinion are combined. Dale D. Armstrong and Anne D. Armstrong, petitioners, resided in Spangle, Washington, at the time their petition was filed. They filed a joint Federal income tax return for tax year 1980. In 1965, Dale Armstrong (hereinafter singularly referred to as "petitioner") opened Dale's Equipment, a sole proprietorship that specialized in the sale of farm machinery. Petitioner ceased business in 1980 and, after reaching this decision, sold his remaining inventory at an auction sale. In an attempt to reconstruct petitioners' gross income from Dale's Equipment, respondent found that the bank deposits from petitioner's business accounts totaled $ 928,313.72 in 1980. Bank deposits are prima facie evidence of income. ; , affd. . From the total deposits in 1980, respondent subtracted $ 362,540.70, which were adjudged to be non-income deposits, *269 resulting in $ 565,773.02 in business receipts that petitioner deposited in 1980. To this amount, respondent added $ 130,260.11 of cash expenditures made by petitioners in 1980. This amount consisted of two types of expenditures: (i) $ 52,260.11 in business expenditures paid by cash; and (ii) $ 78,000 in cash expenditures to acquire assets. The $ 52,260.11 in business expenditures were determined by subtracting the amounts of checks written by petitioners out of their bank accounts for business purposes during 1980 ($ 110,616.57) from the amount of the business expenditures petitioners reported as having incurred on their Federal income tax return for 1980 ($ 162,876.68). The $ 78,000 in cash expenditures was composed of three items: (i) $ 55,000 in cash payment made by petitioner to the Bank of Idaho as partial payment for a $ 100,000 certificate of deposit; (ii) $ 18,500 paid to purchase real property on March 25, 1980; (iii) $ 4,500 expended to partially purchase a money market certificate from First Security Bank on April 18, 1980. In total, respondent determined that gross income from Dale's Equipment was $ 696,033.13 in 1980. In order to determine the net profit from *270 Dale's Equipment, respondent found that petitioner's cost of goods sold during 1980 was $ 9,044.14. By subtracting $ 9,044.14, cost of goods sold, from gross income of $ 696,033.13, respondent then determined that petitioner's gross profit from Dale's Equipment was $ 686,988.99. Then respondent subtracted business expenses of $ 38,289.08 and depreciation of $ 9,475.95, to arrive at $ 639,223.96, which respondent determined represented the net profit from the business. *880 Petitioner claimed at trial and on brief that the cost of goods sold was $ 678,845.56; however, petitioner relied exclusively on his memory to prepare this estimate, and we do not rely on it. One of petitioner's witnesses, who had some experience in the area, estimated that the gross profit margin in the farm machinery industry between sales and cost of goods sold was approximately 18 to 22 percent. Petitioner does not question respondent's reconstruction of income from Dale's Equipment, as calculated above, except as to the item of cost of goods sold. Since the only dispute with respect to the unreported income from Dale's Equipment is this latter amount, we must determine what that amount actually *271 was. Respondent's cost of goods sold estimate of $ 9,044.14 is incredible, in light of his determination that petitioner had gross business revenues of $ 696,033.13. Similarly, we also conclude that petitioner's estimate that the cost of goods sold was $ 678,845.56 is self-serving and equally preposterous. However, we are convinced that petitioner had a substantial inventory of farm implements and machinery in order to generate the substantial revenues that the business took in during 1980. Petitioner presented no written evidence to show the cost of goods sold in 1980. Although this Court bears heavily on a taxpayer "whose inexactitude is of his own making," , we nevertheless conclude that petitioner's gross profit margin was 40 percent, leaving him with $ 417,619.88 in cost of goods sold in 1980. As a result, petitioner's gross profit from Dale's Equipment was $ 278,413.25. After subtracting business expenses of $ 38,289.08 and depreciation of $ 9,475.95, we conclude that petitioner's net profit from Dale's Equipment was $ 230,648.22. The next issue for decision is whether petitioner is liable for the *272 addition to tax for fraud pursuant to section 6653(b). The existence of fraud is a question of fact that must be resolved upon consideration of the entire record. ; . Fraud is never presumed but must be established by independent evidence. . Respondent bears the burden of proving fraud. Rule 142(b). The Court of Appeals for the Ninth Circuit outlined a nonexclusive list of factors which demonstrate fraudulent intent in , affg. . These "badges of fraud" include: (1) understating income; (2) maintaining inadequate records; (3) failing to file income tax returns; (4) giving implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) attempting to conceal illegal activities; (9) dealing in cash; and (10) failing to make estimated tax payments. Petitioner consistently *273 understated his interest income by a substantial amount prior to and after 1980. He did so by giving false Social Security numbers to various banks. When questioned about this practice at trial, petitioner failed to give an explanation. The record shows that petitioners failed to report $ 233,964.88 in interest income during tax years 1978 through 1983, which includes interest income of $ 12,442.04 that was omitted in tax year 1980. Respondent also seeks to impose the section 6653(b) addition to tax with respect to the income that was understated from Dale's Equipment. We share respondent's concern that petitioner failed to keep adequate books and records and that he dealt primarily in cash. We also question why petitioner, a knowledgeable businessman, did not attempt to reconstruct his cost of goods sold figure in a manner that would have been more helpful to this Court. Nevertheless, we hold that respondent has not proven that petitioner fraudulently omitted income from Dale's Equipment. However, because of petitioner's use of false identification numbers to evade reporting interest income on his 1980 Federal income tax return, we conclude that petitioner is liable for the *274 addition to tax under section 6653(b). Because petitioner fraudulently omitted interest income from his gross income, he is liable for an addition to tax equal to 50 percent of his underpayment. [3]
It is also clear that petitioner, as a self-employed businessman, is liable for self-employment tax on his income from Dale's Equipment in 1980. Sec. 1401. Finally, petitioners contend in their petition that they are eligible to compute their income tax liability for 1980 under the income averaging provisions then in effect. Secs. 1301-1305. We have previously held that the intent of section 1304(a) was to allow a taxpayer to elect income-averaging for the first time before this Court. . However, petitioners failed to *275 present evidence proving that they are qualified to elect income averaging. Sec. 1303. They also failed to produce records that would *881 make an income averaging calculation possible. Sec. 1302. Accordingly, petitioners are not entitled to use income averaging for tax year 1980. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Respondent has conceded that Anne D. Armstrong is not liable for any additions to tax under sec. 6653(b).↩
3. Since we have found fraud with respect to petitioner's tax year 1980, we need not address petitioner's claim that respondent mailed his statutory notice of deficiency after the statute of limitations expired. Sec. 6501(c)(1).↩